JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

APPENDIX B

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Third Federal Savings Bank
3 Penns Trail
Newtown, PA 18940

**(b)** County of Residence of First Listed Plaintiff **Bucks County**
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

RW Professional Leasing Services Corp.,
and Barry Drayer
4584 Austin Boulevard, Island Park, NY 11558

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Fox, Rothschild, O'Brien & Frankel, LLP.
1250 South Broad Street
Lansdale, PA 19446

Attorneys (If Known)

## II. BASIS OF JURISDICTION     (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT     (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reap portionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Propety 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Vetenns) | ☐ 345 Marine Product | ☒ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Forec losure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor Litigation | or Defendant) | |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | Security Act | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN     (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

§ 1332(a) - Fraud, Breach of Fiduciary Duty, Misrepresentation and Breach of Contract b/w citizens of different States

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $4,000,000 + Attorneys Fess and Punitive Damages

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____     DOCKET NUMBER _____

DATE _____     SIGNATURE OF ATTORNEY OF RECORD _____

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUN _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

APPENDIX A

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 3 Penns Trail, Newtown, PA 18940

Address of Defendant: 4584 Austin Boulevard, Island Park, NY  11558

Place of Accident, Incident or Transaction: Newtown, Bucks County, PA

(Use Reverse Side For Additional Space)

Does this case involve multidistrict litigation possibilities?                         Yes ☐   No ☒

RELATED CASE, IF ANY:

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                                    Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                                                                                    Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                                                                                                    Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases

(Please specify)
Fraud, Misrepresentation, Breach
of Fiduciary Duty & Contract

### ARBITRATION CERTIFICATION
(Check appropriate Category)

I, Andrew W. Bonekemper , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 7/01/02                    _____                    84313
                                              Attorney-at-Law                              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/01/02                    _____                    84313
                                              Attorney-at-Law                              Attorney I.D.#
                                        Andrew W. Bonekemper

CIV. 609 (9/99)

## UNITED STATES DISTRICT COURT

**APPENDIX A**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 3 Penns Trail, Newtown, PA 18940

Address of Defendant: 4584 Austin Boulevard, Island Park, NY  11558

Place of Accident, Incident or Transaction: Newtown, Bucks County, PA

*(Use Reverse Side For Additional Space)*

Does this case involve multidistrict litigation possibilities?          Yes☐   No☒☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒☒

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases

(Please specify)
Fraud, Misrepresentation, Breach
of Fiduciary Duty & Contract

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, Andrew W. Bonekemper , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 7/01/02                      _____                      84313
                                   Attorney-at-Law                       Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/01/02                      _____                      84313
                                   Attorney-at-Law                       Attorney I.D.#
                                   Andrew W. Bonekemper

CIV. 609 (9/99)

**IN THE UNITED STATES DISTRICT COURT**    APPENDIX C
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

THIRD FEDERAL SAVINGS BANK

                                :            CIVIL ACTION

                 v.              :

RW PROFESSIONAL LEASING SERVICES CORP., :
            and         :            NO.
BARRY DRAYER

     In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

    (a)    Habeas Corpus -- Cases brought under 28 U.S.C. §2241 through §2255.        ( )

    (b)    Social Security -- Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

    (c)    Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

    (d)    Asbestos -- Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

    (e)    Special Management -- Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

    (f)    Standard Management -- Cases that do not fall into any one of the other tracks.    (X)

07/01/02
**Date**

/ **Attorney-at-law**
Andrew W. Bonekemper
Third Federal Savings Bank
**Attorney for**

(Civ. 660) 7/95

APPENDIX G

## SUMMONS IN A CIVIL ACTION

| UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA | |
|---|---|
| THIRD FEDERAL SAVINGS BANK<br><br>   v.<br><br>RW PROFESSIONAL LEASING SERVICES CORP.,<br>    AND<br>BARRY DRAYER | CIVIL ACTION NO.<br><br><br>TO: (NAME AND ADDRESS OF<br>    DEFENDANT)<br>    BARRY DRAYER<br>    4584 Austin Boulevard<br>    Island Park, NY  11558 |

**YOU ARE HEREBY SUMMONED** and required to serve upon

Plaintiff's Attorney (Name and Address)
    Andrew W. Bonekemper  or David A. Gradwohl
    Fox, Rothschild, O'Brien & Frankel, LLP
    1250 South Broad Street
    Lansdale, PA  19446

an answer to the complaint which is herewith served upon you, within  days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

| Michael E. Kunz, Clerk of Court | Date: |
|---|---|
| (By) Deputy Clerk | |

APPENDIX G

### SUMMONS IN A CIVIL ACTION

| UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA | |
|---|---|
| THIRD FEDERAL SAVINGS BANK<br>v.<br><br>RW PROFESSIONAL LEASING SERVICES CORP.,<br>AND<br>BARRY DRAYER | CIVIL ACTION NO.<br><br>TO: (NAME AND ADDRESS OF<br>DEFENDANT)<br>  RW PROFESSIONAL LEASING SERVICES,<br>  CORP.<br>  4584 Austin Boulevard<br>  Island Park, NY   11558 |

**YOU ARE HEREBY SUMMONED** and required to serve upon

Plaintiff's Attorney (Name and Address)
    Andrew W. Bonekemper    or David A. Gradwohl
    Fox, Rothschild, O'Brien & Frankel,LLP
    1250 South Broad Street
    Lansdale, PA  19446

an answer to the complaint which is herewith served upon you, within  days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

| Michael E. Kunz, Clerk of Court | Date: |
|---|---|
| (By) Deputy Clerk | |

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

---

|  |  |
|---|---|
| THIRD FEDERAL SAVINGS BANK<br>3 Penns Trail<br>Newtown, PA 18940,<br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>RW PROFESSIONAL LEASING SERVICES<br>CORP.,<br>4584 Austin Boulevard<br>Island Park, NY 11558,<br><br>　　　and<br><br>BARRY DRAYER,<br>4584 Austin Boulevard<br>Island Park, NY  11558,<br>　　　　　　　Defendants. | CIVIL ACTION<br><br><br><br>NO.<br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

---

## C O M P L A I N T

### Parties

      1.     Plaintiff, Third Federal Savings Bank ("Third Federal"), is a federally chartered Savings Association with its principal place of business at 3 Penns Trail, Newtown, Bucks County, Pennsylvania, 18940.

      2.     Defendant, RW Professional Leasing Services Corp. ("PLS") is a New York Corporation with its principal place of business at 4584 Austin Boulevard, Island Park, New York, 11558.

LN1 92149v2 07/01/02

3.    Defendant, Barry Drayer ("Drayer"), is an adult individual who is a citizen of a state other than Pennsylvania.  Drayer is the Senior Vice President of PLS, and works at PLS' office at 4584 Austin Boulevard, Island Park, New York, 11558.

## Jurisdiction and Venue

4.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00.

5.    Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to Third Federal's claims took place within this judicial district.

## Background Facts

6.    PLS is engaged in the business of direct financing leases of medical, computer and other equipment for healthcare providers, such as private physicians, outpatient facilities, and non-physician medical service providers.

7.    PLS has entered into thousands of leases with health care providers and has financed those leases through hundreds of different banking institutions, including Third Federal.  The leases sold by PLS to Third Federal were on a full recourse basis.  In other words, if the lessee defaulted on the payments, Third Federal was entitled to seek full payment from PLS.

8.    The leases sold and assigned to Third Federal were serviced by PLS pursuant to a Sale and Servicing Agreement ("Service Agreement").  A true and correct copy of the form of Service Agreements used by Third Federal and PLS is attached here as Exhibit "A" and incorporated herein by reference.

2

9.      Under the Service Agreements, PLS was to receive all payments made by Third Federal's various lessees, to record all payments in separate accounts, and to pay over to Third Federal in Bucks County all sums received from the lessees.

10.     Under the Assignments of Leases, PLS, which was the lessor under the lease agreements, assigned to Third Federal all right, title and interest in the leases and in the property covered by the leases. Under the Assignment of Leases, Third Federal was entitled to receive all rentals paid on the leases. A true and correct copy of the form of Assignment of Leases used by PLS and Third Federal is attached hereto as Exhibit "B" and incorporated herein by reference.

11.     Under the lease agreements, security interests authorized by the Uniform Commercial Code were imposed on the leased equipment in favor of Third Federal.

12.     Contrary to its promise in the Service Agreements to maintain separate accounts for each lease, PLS maintained a single pooled account at the Bank of New York, deposited all lease payments in that account, and made all payments to Third Federal in Bucks County from that account.

13.     The Service Agreements provided that PLS was an agent of Third Federal, but PLS' agency status would end upon (i) PLS' insolvency, (ii) PLS' failure to remedy a breach of its obligations under the Service Agreements, or (iii) on demand of Third Federal at any time.

14.     Upon termination of the Service Agreements, PLS was required to turn over all supporting documents, lease files and customer records to Third Federal, and serve joint notices upon the lessees of the change in the servicing agent from PLS.

15.     Each Service Agreement was also accompanied by a Promissory Note from PLS to Third Federal which included a 10% late charge for payments made more than 10

3

days late.  A true and correct form of Promissory Note used by PLS and Third Federal is attached hereto as Exhibit "C" and incorporated herein by reference.

16.     The Promissory Notes provided that upon any default in payment, the remaining balance due under each lease would be payable immediately at the option of Third Federal.

17.     The Promissory Notes also provided that Third Federal is entitled to recover the costs of collection and attorneys fees related to the collection on the Promissory Notes.

18.     The Promissory Notes further provided that all of PLS' obligations become due and payable immediately upon the violation of any term of the various Service Agreements or the various Assignment of Leases.

19.     PLS sent the Service Agreements, Promissory Notes, Assignment of Leases, and Leases to Third Federal in Bucks County and in return Third Federal funded the purchase of the equipment.

20.     Unknown to Third Federal, PLS allegedly experienced a revenue slow-down combined with increased delinquency rates and reduced financing opportunities beginning as early as 1999.

21.     Because PLS used a single pooled account, rather than separate accounts as required by the Service Agreements, payments into the pooled account were not necessarily paid to the bank that purchased the lease on which payment was made.  As a result, Third Federal did not get the payments made by its lessees to PLS.

4

22.    Payments to the single pooled account by Third Federal's lessees went to the next bank due to be paid, rather than to Third Federal who had purchased or financed the lease on which the payment to PLS was made.

23.    As revenues diminished, the funds being deposited into the single pooled account were unable to support the payments due to Third Federal and other banks.

24.    Third Federal was totally unaware of the manipulation of funds paid by its lessees, and PLS' use of such funds to pay other banks and not Third Federal.

25.    Third Federal was also unaware that certain lessees had paid their leases in full and/or had refinanced their leases. In either situation, the lessees sent PLS lump sum payments. However, PLS did not send the lump sum payments to Third Federal or advise Third Federal that the affected leases had terminated due to payment in full or refinancing. To the contrary, PLS made it appear that the affected leases continued to exist by making monthly payments to Third Federal and sending reports to Third Federal showing the leases as still active.

26.    In furtherance of this scheme to conceal the pay-offs and/or refinancing of certain leases, Drayer made certain representations to Third Federal in Bucks County, orally and in writing, and to the new financing agency for the lessee. In order for PLS to receive one pay-off on a refinancing, Drayer told a new financing agency for the lessee that the security interest held by Third Federal in the subject equipment would be released. But, PLS never asked Third Federal to release its security interest and never paid the amount received from the new financing agency to Third Federal.

27.    On February 28, 2002, PLS provided a report to Third Federal showing balances due on Third Federal's leases (the "2/28/02 Report"). The amounts due on the leases

5

owned by Third Federal, according to the 2/28/02 Report, totaled $4,295,339.00. None of the leases were reported to be paid off or refinanced.

28.    On April 8, 2002, PLS provided another report to Third Federal showing the balances due on Third Federal's leases (the "4/8/02 Report"). The amounts due on the leases owned by Third Federal, according to the 4/8/02 Report, totaled $3,700,272.00. According to Drayer, the reduced balance was due to payments received by PLS. However, Third Federal never received those payments during the intervening period.

29.    The 4/8/02 report showed thirty-eight (38) leases with a lower balance due on 4/8/02 than had been due on 2/28/02. The total amount allegedly paid on those thirty-eight (38) leases between 2/28/02 and 4/8/02 was $700,606.00.

30.    The 4/8/02 report also showed increased balances due between 2/28/02 and 4/8/02 on seven (7) of the leases owned by Third Federal. The increased balances on those seven (7) leases totaled $310,096.00.

31.    The 4/8/02 Report does not contain entries for two (2) leases in the name Central Penn Ear Nose & Throat ("Central Penn"). On the 2/28/02 Report, the balance due on those two (2) leases was $204,557.00, but Third Federal never received that amount prior to 4/8/02.

32.    From its own investigation of the leases and payments made thereon and through contact with the lessees, Third Federal has discovered that approximately $836,000.00 has been paid to PLS but not paid over to Third Federal, according to the Service Agreements, Assignments of Leases and Promissory Notes.

LN1 92149v2 07/01/02

33.    Third Federal has assumed all of the servicing responsibilities previously performed by PLS under the Service Agreements.  After assuming that responsibility, Third Federal has discovered the following:

a.    Several leases (e.g., accounts #25337, #25523, #25497 and #25505) were paid off or refinanced, according to the physicians who signed the leases, even though the records from PLS supplied to Third Federal indicate that the leases are open and payments were made after the alleged pay off or refinancing; and

b.    One lease holder (account #25920) claims that another bank claims an interest in the equipment subject to the lease owned by Third Federal.

34.    Despite several requests directed to PLS through its counsel to provide Third Federal with certain information about its leases, virtually none of the information has been provided.

## COUNT I—BREACH OF CONTRACT

### Third Federal v. PLS

35.    Third Federal incorporates by reference herein Paragraph 1 through 34 of this Complaint.

36.    Third Federal performed all of its obligations under the Service Agreements.

37.    PLS breached its contract with Third Federal under the Service Agreements because:

a.    PLS failed to pay over to Third Federal all lease payments made on leases assigned to Third Federal, as required by Paragraph 2(a) of the Service Agreements;

7

b.　　　　PLS failed to turn over documents and records of accounts when Third Federal assumed servicing responsibilities for the leases assigned to Third Federal pursuant to Paragraph 2(d) of the Service Agreements;

c.　　　　PLS failed to maintain separate accounts for each lease assigned to Third Federal as required by Paragraph 2(a) of the Service Agreements; and

d.　　　　PLS has released security interests in favor of Third Federal without Third Federal's prior notice and authorization.

38.　　　Third Federal has suffered damages as a result of PLS' breaches of the Service Agreements. Specifically, Third Federal is due in excess of $836,000.00 which has been paid to PLS by lessees of the equipment leases owned by Third Federal, but has not been paid to Third Federal.

**WHEREFORE**, Plaintiff, Third Federal, respectfully requests that this Court enter judgment in its favor, and against Defendant PLS, and award compensatory damages in an amount in excess of $836,000.00, plus interest, costs of this suit and such other relief as this Court deems necessary or appropriate.

## COUNT II—BREACH OF CONTRACT

### Third Federal v. PLS

39.　　　Third Federal hereby incorporates by reference herein Paragraphs 1 through 37 of this Complaint.

40.　　　Under the Promissory Notes PLS agreed to make payments to Third Federal. PLS failed to make the required payments and is in default under the Promissory Notes. As a result of that default, all unpaid amounts are immediately due and payable in full.

8

41.     The Promissory Notes also accelerate and become immediately due and payable upon any violation of the terms of the Service Agreements between PLS and Third Federal.  Since PLS has violated the terms of the Service Agreements with Third Federal, all unpaid amounts under the Promissory Notes are immediately due and payable in full to Third Federal.

42.     The Promissory Notes also accelerate and become immediately due and payable at the option of Third Federal if PLS' financial condition became unsatisfactory.  PLS' financial condition is unsatisfactory to Third Federal, and as a result, all unpaid amounts under the Promissory Notes are immediately due and payable in full.

43.     PLS has not paid the full amount due in the Promissory Notes.

44.     Under the Promissory Notes, Third Federal is entitled to receive costs of collection and attorneys fees.

**WHEREFORE,** Plaintiff, Third Federal, respectfully requests that this Court enter judgment in its favor, and against Defendant PLS, and award compensatory damages in an amount in excess of $4,000,000.00, plus interest, attorneys' fees, costs of this suit and such other relief as this Court deems necessary or appropriate.

## COUNT III—FRAUD

### Third Federal v. PLS and Drayer

45.     Third Federal hereby incorporates by reference herein Paragraphs 1 through 44 of this Complaint.

46.     Drayer was the corporate officer in charge of the servicing obligations performed by PLS for Third Federal.  In various communications with Third Federal, Drayer made various misrepresentations of fact and omitted to provide material facts as part of a

9

fraudulent scheme to use funds placed in the single pooled account which should have been paid to Third Federal for other purposes and to pay other banks.

47.    The material misrepresentations and fraudulent omissions of fact made by PLS and Drayer include, but are not limited to the following:

a.    The failure to disclose to Third Federal that PLS was not keeping separate accounts for each lease;

b.    The failure to disclose to Third Federal that certain lessees had paid off their leases in full as early as 2000;

c.    The failure to disclose that certain lessees had refinanced certain leases owned by Third Federal and that the pay-off by the new financing agency had not been sent to Third Federal;

d.    The failure to disclose that Third Federal no longer had a security interest in the equipment subject to certain leases which had been paid off or refinanced; and

e.    The misrepresentations in the report of February 28, 2002, and other prior reports that the monthly payments were being made on leases which were still in effect, when such leases had been paid off or refinanced and were no longer valid and enforceable against the lessee.

48.    As part of the fraudulent scheme, Drayer represented to new financing agencies and to the lessees, that Third Federal's security interest would be released, even though Third Federal never received payment in full and had not authorized such release.

49.    In all respects and at all times material hereto, PLS and Drayer acted with knowledge of the fraud or at a minimum with a conscious disregard of the fraud.  Drayer and

10

PLS knew the report of February 28, 2002, was materially false when it was sent to Third Federal.

50.     The false statements and fraudulent omissions made by PLS and Drayer were substantial factors in Third Federal's decision not to terminate the Service Agreements, to continue to use PLS, and not to demand payment in full under the Promissory Notes.

51.     The fraudulent misrepresentations and omissions by PLS and Drayer were a proximate cause of the damages suffered by Third Federal.

52.     Drayer himself either made the above described fraudulent misrepresentations and omissions to Third Federal or controlled or directed the fraudulent misrepresentations and omissions made by PLS to Third Federal.

53.     The fraudulent misrepresentations and omissions of PLS and Drayer were willful and malicious, and designed to hide the fraudulent scheme that PLS had directed money received from Third Federal's lessees to other banks.  As a result, Third Federal is entitled to punitive damages.

**WHEREFORE,** Plaintiff, Third Federal, respectfully requests that this Court enter judgment in its favor, and against Defendant PLS, and award compensatory damages in excess of $836,000.00, plus punitive damages in an amount determined by the trier of fact, costs of this suit and such other relief as this Court deems necessary or appropriate.

## COUNT IV—NEGLIGENT MISREPRESENTATION
### Third Federal v. PLS and Drayer

54.     Third Federal hereby incorporates by reference herein Paragraphs 1 thorough 53 of this Complaint.

11

55.    PLS and Drayer made negligent misrepresentations and omissions of fact as described in the preceding paragraphs.  These negligent misrepresentations and omissions included, but are not limited to, the failure to disclose that PLS did not maintain separate accounts for payments on Third Federal's leases, the failure to disclose that certain leases had been paid off or refinanced and sums were paid to PLS but not forwarded to Third Federal, and the misrepresentations of the account balances in the report from PLS dated February 28, 2002.

56.    The information misrepresented or omitted by PLS and Drayer was not within the fair and reasonable reach of Third Federal.

57.    PLS and Drayer negligently made the misrepresentations and omissions with knowledge or the conscious disregard that Third Federal would rely on their misrepresentations and omissions in deciding to continue its relationship with PLS and not to demand immediate payment in full.

58.    It was reasonably foreseeable that Third Federal would justifiably rely upon the misrepresentations and omissions by PLS and Drayer in making its decision to continue to use PLS.

59.    In justifiable reliance on the misrepresentations and omissions as described herein, Third Federal was enticed to continue to use PLS for servicing of its leases and to permit PLS to collect and send to Third Federal the payments made pursuant to the leases owned by Third Federal.

60.    The negligent misrepresentations and omissions of PLS and Drayer were a substantial factor in Third Federal's decision to continue to use PLS to service Third Federal's leases and not to demand immediate payment in full.

12

WHEREFORE, Plaintiff, Third Federal, respectfully requests that this Court enter judgment in its favor, and against Defendant PLS, and award compensatory damages in an amount in excess of $836,000.00, plus interest, attorneys' fees, costs of this suit and such other relief as this Court deems necessary or appropriate.

## COUNT V – AIDING AND ABETTING FRAUD
### Third Federal v. Drayer

61.    Third Federal incorporates by reference herein Paragraphs 1 through 60 of this Complaint.

62.    Based on the facts stated in the preceding paragraphs of the Complaint, Drayer aided and abetted the fraudulent scheme of PLS because Drayer directed the actions of PLS and made misrepresentations in furtherance of the fraudulent scheme.

63.    Drayer's aiding and abetting of the fraudulent scheme was a substantial factor and a proximate cause of the loses suffered by Third Federal.

64.    As a result of the negligent misrepresentations and omissions, Third Federal suffered damages in excess of $836,000.00.

WHEREFORE, Plaintiff, Third Federal, respectfully requests that this Court enter judgment in its favor, and against PLS, and award compensatory damages in an amount in excess of $836,000.00, plus punitive damages in an amount to be determined by the trier of fact, costs of this suit and such other relief as this Court deems necessary or appropriate.

13

## COUNT VI—BREACH OF FIDUCIARY DUTY

### Third Federal v. PLS and Drayer

65.    Third Federal hereby incorporates by reference herein Paragraphs 1 through 64 of this Complaint.

66.    Under the Service Agreements, PLS acted as Third Federal's agent.  As a result, PLS owed fiduciary duties to Third Federal.

67.    Under the Assignments of Leases, PLS acted as the attorney-in-fact for Third Federal with regard to the collection and payment of its leases.  As a result, PLS owed fiduciary duties to Third Federal.

68.    By not maintaining separate accounts, by allowing payment due to Third Federal to be deposited into the single pooled account, and then paid to other banks and not to Third Federal, PLS breached its fiduciary duties to Third Federal.

69.    By failing to pay over the proceeds of pay offs and refinancing leases owned by Third Federal without Third Federal's knowledge or approval, PLS breached its fiduciary duties to Third Federal.

70.    By stating that the security interests on equipment in the name of Third Federal would be released, PLS breached its fiduciary duties to Third Federal.

71.    As a direct and proximate result of PLS' breach of fiduciary duty, Third Federal was harmed and suffered damages in an amount in excess of $836,000.00.

72.    Since PLS knew or recklessly disregarded the facts giving rise to its breach of fiduciary duty, Third Federal is entitled to punitive damages.

**WHEREFORE,** Plaintiff Third Federal respectfully requests that this Court enter judgment in its favor, and against Defendant PLS, and award compensatory damages in an

14

amount in excess of $836,000,00, plus punitive damages in an amount to be determined by the tier of fact, interest, costs of this suit and such other relief as this Court deems necessary or appropriate.

## COUNT VII—AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY

### Third Federal v. Drayer

73.    Third Federal incorporates by reference herein Paragraph 1 through 72 of this Complaint.

74.    At all times relevant to the Complaint, Drayer was an officer of PLS and owed fiduciary duties to PLS as its agent.

75.    Drayer caused PLS to breach its fiduciary duties as described in the preceding paragraphs of this Complaint in violation of his fiduciary duties to PLS.

76.    Drayer's wrongful conduct aided and abetted PLS' breach of fiduciary duties.  As a result of that breach of trust, Drayer is liable for the harm caused thereby.

77.    As a direct and proximate cause of Drayer's aiding and abetting of PLS' actions, Third Federal was harmed and suffered damages in excess of $836,000.00.

78.    Since Drayer knew or recklessly disregarded the facts that PLS breached its fiduciary duties, Third Federal is entitled to punitive damages.

**WHEREFORE,** Plaintiff Third Federal respectfully requests that this Court enter judgment in its favor, and against Defendant, Drayer, and award compensatory damages in an amount in excess of $836,000.00, plus punitive damages in an amount to be determined by the

LN1 92149v2 07/01/02

trier of fact, interest, costs of this suit and such other relief as this Court deems necessary or appropriate.

## JURY TRIAL DEMAND

79.    Plaintiff hereby demands a trial by jury.


FOX, ROTHSCHILD, O'BRIEN & FRANKEL, LLP


David A. Gradwohl (18340)
Andrew W. Bonekemper (84313)
1250 South Broad Street, Suite 1000
Lansdale, PA 19446-0431
215-669-6000
Attorneys for Plaintiff, Third Federal Savings Bank


Dated: 7/1/02

LN1 92149v2 07/01/02

# EXHIBIT "A"

# Sale and Servicing Agreement

THIS SALE AND SERVICING AGREEMENT, made as of the 6th day of August, 2001, by and between RW Professional Leasing Services, having offices at 4584 Austin Blvd., Island Park, NY 11558 (hereinafter referred to as "Seller") and Third Federal Savings Bank, having offices at 3 Penns Trail, Newtown, PA 18940 (hereinafter referred to as "Bank").

WITNESSETH THAT:

WHEREAS, Seller is selling to Bank the Leases originated by Seller; and

WHEREAS, Seller will continue to service said Leases for Bank on the terms set forth herein;

NOW, THEREFORE, in consideration of the following mutual covenants and agreements, the parties heretofore agree as follows:

1. Sale of Leases.
(a) Seller hereby sells to Bank and Bank purchases from Seller the Leases set forth in "Exhibit A" hereto attached and made a part hereof (hereinafter referred to as "Leases"), in the principal amount of $332,078.69 (Three hundred thirty two thousand seventy eight and 69/100 Dollars).
(b) Bank shall be the absolute owner of said Leases and this Agreement constitutes a sale and shall not be construed as a loan by Bank to Seller or as creating any other relationship. Bank shall own an undivided interest in the leases.
(c) Bank shall hold possession of the Lease Documents and retain security in its name.
(d) Seller shall mark its books and records, including computer records, to show the ownership of Bank, and the financial statements of Seller shall duly reflect this sale.

2. Servicing.
(a) Seller shall as agent for Bank receive all amounts as the same become due on the Leases, including, but not limited to, principal, interest, the proceeds of insurance, prepayments, amounts payable by guarantors, and lease changes, and shall record the same in separate accounts for Bank. All such sums shall be paid over to Bank.
(b) Seller agrees to perform such servicing duties as are normally undertaken by a prudent lender with respect to loans of a comparable nature.
(c) For its servicing fee, Seller acknowledges value received at the time of sale of the leases to Purchaser.
(d) Seller's agency status hereunder shall terminate upon (i) the insolvency, closing or liquidation of Seller, (ii) Seller's failure to remedy a breach of its obligations hereunder, or (iii) on demand of Bank at any time. On such termination, Seller shall deliver to Bank supporting documents, files and customer records as Bank reasonably deems necessary. Seller agrees to join in a notice to customers informing them of the transfer; provided, however, that upon any termination Seller shall have the right to purchase the Lease at its then principal balance.

3. Assignments. Seller shall not encumber, assign or otherwise transfer its rights or duties hereunder without written permission of Bank.

4. Warranties and Representations of Seller.
(a) Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of New York and has all requisite corporate power and authority to carry on the business now conducted by it.
(b) The execution and delivery of this Agreement by Seller has been duly authorized and all other

corporate proceedings required by law, Seller's charter and bylaws, or otherwise, for the execution and delivery of this Agreement and for the consummation of the transactions provided for herein have been duly taken.

(c) This Agreement constitutes the valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

(d) Seller owns the Leases and has good and marketable title to same, free from any security interest, lien, encumbrance, restriction, charge, condition or option, and the security for same has been duly perfected.

(e) Neither the execution, nor the delivery of this Agreement, nor the consummation of the transfer contemplated hereby, will at the Closing constitute a violation of, or be in conflict with, or constitute a default under any term or provision of Seller's charter, bylaws or any material contract, indenture, mortgage or other material agreement to which Seller is a party.

(f) To Seller's best knowledge, Seller fully complies with all applicable laws and regulations and, to Seller's best knowledge, there are no material claims, investigations, examinations or audits pending or threatened affecting Seller's right to continue its business.

(g) The Leases sold hereunder is not in arrears and the Leases and accompanying documentation are in full compliance with applicable law and regulations.  Seller agrees to defend, indemnify and hold harmless Bank for any claims, costs, damages or liabilities resulting from any noncompliance.

7. Warranties and Representations of Bank.

(a) The Bank is duly organized, validly existing and in good standing under applicable law and has all requisite corporate power and authority to enter into this Agreement and to carry out the transactions contemplated hereby.

(b) This agreement constitutes the binding obligation of the Bank enforceable in accordance with its terms.

(c) Neither the execution, nor the delivery of this Agreement, nor the consummation of the transfers contemplated hereby, will at the Closing constitute a violation of, or be in conflict with, or constitute a default under any terms or provision of the Bank's charter, bylaws or any material contract, indenture, mortgage or other material agreement to which Bank is a party.

8. Miscellaneous.

(a) Neither the execution of this Agreement nor its consummation is intended to be, nor shall it be, construed to be the formation of a joint venture or partnership between the Bank and Seller.

(b) This Agreement and the rights and duties described herein shall be governed by and interpreted in accordance with the laws of the Commonwealth of Pennsylvania.

(c) This Agreement represents the entire understanding between the parties and supersedes any prior agreement, oral or written, and may not be amended except by a writing signed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the date first above written.

RW PROFESSIONAL LEASING SERVICES CORP                    THIRD FEDERAL SAVINGS BANK

By: _____                    By: _____
Its:  President                                 Its:  Vice President

Exhibit A - To accompany the Sale and Servicing Agreement dated August 6, 2001 between
RW Professional Leasing Services Corp. and Third Federal Savings Bank

| Lease Number | Lessee | Orig Term | Term Rem | Monthly Payment | Present Value |
|---|---|---|---|---|---|
| N/A | Jefferson Dental Clinics | 84 | 82 | Variable | 146,187.14 |
| N/A | West Coast Radiology | 63 | 62 | Variable | 98,583.22 |
| N/A | Jorge Ferreira, DMD | 84 | 83 | Variable | 87,308.33 |

By: Rochelle Besser
President, RW Professional Leasing Services Corp.

**EXHIBIT "B"**

# Assignment of Leases

This Assignment of Leases, dated this 6th day of August, 2001, is from RW Professional Leasing Services, having offices at 4584 Austin Blvd., Island Park, NY 11558 ("Assignor") and is to Third Federal Savings Bank, having offices at 3 Penns Trail, Newtown, PA 18940 ("Bank").

WHEREAS, Assignor is the holder of the Leases (the "Leases"), which Leases are secured by equipment which is being leased pursuant to terms and conditions of the Leases; which Leases are described and set forth in Exhibit A annexed hereto and made a part hereof including any guarantees and/or indemnifications affixed thereto; and

WHEREAS, Assignor is selling its right, title, and interest in the Leases and the equipment to Bank as of the date above;

NOW, THEREFORE, for valuable consideration, the receipt of which is hereby acknowledged, Assignor hereby sells, transfers, and sets over to Bank its successors and assigns the annexed above named Leases, together with all rental payments due and to become due thereunder, and all of Assignor's right, title and interest in the property covered by and described in the Leases, and all of Assignor's rights and remedies thereunder and under any guaranty thereof, including the right to take in Assignor's or Bank's name, any and all proceedings, legal, equitable, or otherwise, that Assignor might otherwise take, save for this assignment.

Assignor warrants and guarantees that Assignor is the owner of property described in the Leases and said property is free from all liens and encumbrances except the Leases; that the Leases and any accompanying guarantees, waivers and/or all related instruments are genuine and enforceable; that the Leases are the only Leases executed concerning the property described in the Leases; that the Leases are and will continue free from defenses, set-offs and counterclaims; that all signatures, names, addresses, amounts and other statements and facts contained in the Leases are true and correct; that the aggregate unpaid rentals shown in Exhibit B attached hereto and made a part hereof is correct; that the property has been delivered to the lessees under the Leases on the date set forth in satisfactory condition and has been accepted by lessees; that Assignor will comply with all its warranties and other obligations with respect thereto; that the Leases transactions conform to all applicable laws and regulations; that the Leases constitute and will continue to constitute a valid reservation of unencumbered title to or first lien upon or security interest in the property covered thereby, effective against all persons; and that if filing, recordation or any other action or procedure is permitted or required by statue or regulation to such reservation of title or lien or security interest, the same has been accomplished.

Assignor further warrants and guarantees and represents that the Leases are in full force and effect and that Assignor has not assigned or pledged, and hereby covenants that Assignor will not assign or pledge, so long as this instrument of assignment shall remain in effect, the whole or part of the rights hereby assigned, to anyone other than Bank, its successors or assigns.

Bank shall have no obligation of Assignor as lessor under said Leases except as described herein.

Bank shall have the right to receive all rentals due or to become due under the Leases during the Initial Term thereof or until the Lessee's obligation is paid in full, whichever comes first; provided however, that if lessee shall well and timely make all payments required of it for the Initial Term of the Leases or until the Lessee's obligation is paid in full, whichever comes first, Bank agrees to reassign the Leases to Assignor at the expiration

of its Initial Term without warranty or representation or further consideration of any kind. As used herein, "Initial Term" shall mean the fixed, non-cancelable period of the Leases set forth in Exhibit A annexed hereto and made a part hereof.

All Assignor's right, title and interest assigned hereunder may be reassigned by Bank and any subsequent Bank. It is expressly agreed that anything herein contained to the contrary notwithstanding Assignor's obligations under the Leases may be performed by Bank or any subsequent Bank without releasing Assignor therefrom, the Bank shall not, by reason of this assignment be obligated to perform any of Assignor's obligations under the Leases or file any claim or take any other action to collect or enforce payment assigned hereunder.

This Assignment is made pursuant to a certain Sale and Servicing Agreement, dated even date herewith, and such agreement is incorporated herein by reference. The word Leases as used herein shall mean the individual Leases described in the attached schedule, and the word Lessee shall refer to the signors of the Leases.

Assignor hereby constitutes Bank, it's successors and assigns, Assignor's true and lawful attorney irrevocably with full power (in Assignor's name or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all rents and claims for money due and to become due under, or arising out of the Leases, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute any proceedings which to Bank or any subsequent Bank seem necessary or advisable, all without affecting Assignor's liability in any manner whatsoever.

Assignor further agrees that Bank, its successors and assigns may release on terms satisfactory to Bank, its successors and assigns or by operation of law or otherwise or to compromise or adjust any and all rights against and grant extensions of time of payment to lessees or any other persons obligated on the Leases or any accompanying guaranty, or to agree to the substitution of a lessee without notice to Assignor and without affecting Assignor's obligations hereunder.

Assignor waives presentment and demand for payment, protest or notice of nonpayment and notice as to all agreements and all related documents now and hereafter assigned or endorsed and subordinate to any rights Bank may now or hereafter have against lessees any rights Assignor may now or hereafter have or acquire by reason of payment to Bank of any payments under the agreement or otherwise.

IN WITNESS WHEREOF, Assignor has duly executed this Agreement as of the day and year first above mentioned.

RW PROFESSIONAL LEASING SERVICES          THIRD FEDERAL SAVINGS BANK

By: _____               By: _____

Its/ President                            It's: _Vice President_____

Exhibit A - To accompany the Assignment of Leases dated August 6, 2001 between
RW Professional Leasing Services Corp. and Third Federal Savings Bank

| Lease Number | Lessee | Orig Term | Term Rem | Monthly Payment | Present Value |
|---|---|---|---|---|---|
| N/A | Jefferson Dental Clinics | 84 | 82 | Variable | 146,187.14 |
| N/A | West Coast Radiology | 63 | 62 | Variable | 98,583.22 |
| N/A | Jorge Ferreira, DMD | 84 | 83 | Variable | 87,308.33 |

By:  Rochelle Besser
President, RW Professional Leasing Services Corp.

Exhibit B--To Accompany the Assignment of Leases dated August 6, 2001
between RW Professional Leasing Services Corp. and Third Federal Savings Bank

Principal Purchased    $332,078.69
Interest Rate          8.50%
Monthly Payment        variable
Term (months)          83

| Pmt No. | Payment Date | Beginning Balance | Payment Amount | Interest | Principal | Ending Balance |
|---|---|---|---|---|---|---|
| 1 | 09/06/01 | 332,078.69 | 2,456.49 | 2,352.22 | 104.27 | 331,974.42 |
| 2 | 10/06/01 | 331,974.42 | 2,456.49 | 2,351.49 | 105.00 | 331,869.42 |
| 3 | 11/06/01 | 331,869.42 | 2,456.49 | 2,350.74 | 105.75 | 331,763.67 |
| 4 | 12/06/01 | 331,763.67 | 4,550.49 | 2,349.99 | 2,200.50 | 329,563.17 |
| 5 | 01/06/02 | 329,563.17 | 4,550.49 | 2,334.41 | 2,216.08 | 327,347.09 |
| 6 | 02/06/02 | 327,347.09 | 4,550.49 | 2,318.71 | 2,231.78 | 325,115.30 |
| 7 | 03/06/02 | 325,115.30 | 4,550.49 | 2,302.90 | 2,247.59 | 322,867.71 |
| 8 | 04/06/02 | 322,867.71 | 4,550.49 | 2,286.98 | 2,263.51 | 320,604.20 |
| 9 | 05/06/02 | 320,604.20 | 4,550.49 | 2,270.95 | 2,279.54 | 318,324.66 |
| 10 | 06/06/02 | 318,324.66 | 4,550.49 | 2,254.80 | 2,295.69 | 316,028.97 |
| 11 | 07/06/02 | 316,028.97 | 4,550.49 | 2,238.54 | 2,311.95 | 313,717.02 |
| 12 | 08/06/02 | 313,717.02 | 4,550.49 | 2,222.16 | 2,328.33 | 311,388.69 |
| 13 | 09/06/02 | 311,388.69 | 5,389.89 | 2,205.67 | 3,184.22 | 308,204.47 |
| 14 | 10/06/02 | 308,204.47 | 5,389.89 | 2,183.12 | 3,206.77 | 304,997.70 |
| 15 | 11/06/02 | 304,997.70 | 5,389.89 | 2,160.40 | 3,229.49 | 301,768.21 |
| 16 | 12/06/02 | 301,768.21 | 5,389.89 | 2,137.52 | 3,252.37 | 298,515.84 |
| 17 | 01/06/03 | 298,515.84 | 5,389.89 | 2,114.49 | 3,275.40 | 295,240.44 |
| 18 | 02/06/03 | 295,240.44 | 5,389.89 | 2,091.29 | 3,298.60 | 291,941.83 |
| 19 | 03/06/03 | 291,941.83 | 5,389.89 | 2,067.92 | 3,321.97 | 288,619.87 |
| 20 | 04/06/03 | 288,619.87 | 5,389.89 | 2,044.39 | 3,345.50 | 285,274.37 |
| 21 | 05/06/03 | 285,274.37 | 5,389.89 | 2,020.69 | 3,369.20 | 281,905.17 |
| 22 | 06/06/03 | 281,905.17 | 5,389.89 | 1,996.83 | 3,393.06 | 278,512.11 |
| 23 | 07/06/03 | 278,512.11 | 5,389.89 | 1,972.79 | 3,417.10 | 275,095.01 |
| 24 | 08/06/03 | 275,095.01 | 5,389.89 | 1,948.59 | 3,441.30 | 271,653.71 |
| 25 | 09/06/03 | 271,653.71 | 6,329.28 | 1,924.21 | 4,405.07 | 267,248.65 |
| 26 | 10/06/03 | 267,248.65 | 6,329.28 | 1,893.01 | 4,436.27 | 262,812.38 |
| 27 | 11/06/03 | 262,812.38 | 6,329.28 | 1,861.59 | 4,467.69 | 258,344.69 |
| 28 | 12/06/03 | 258,344.69 | 6,329.28 | 1,829.94 | 4,499.34 | 253,845.35 |
| 29 | 01/06/04 | 253,845.35 | 6,329.28 | 1,798.07 | 4,531.21 | 249,314.14 |
| 30 | 02/06/04 | 249,314.14 | 6,329.28 | 1,765.98 | 4,563.30 | 244,750.83 |
| 31 | 03/06/04 | 244,750.83 | 6,329.28 | 1,733.65 | 4,595.63 | 240,155.20 |
| 32 | 04/06/04 | 240,155.20 | 6,329.28 | 1,701.10 | 4,628.18 | 235,527.02 |
| 33 | 05/06/04 | 235,527.02 | 6,329.28 | 1,668.32 | 4,660.96 | 230,866.06 |
| 34 | 06/06/04 | 230,866.06 | 6,329.28 | 1,635.30 | 4,693.98 | 226,172.08 |
| 35 | 07/06/04 | 226,172.08 | 6,329.28 | 1,602.05 | 4,727.23 | 221,444.85 |

Page 2
Exhibit B--To Accompany the Assignment of Leases dated August 6, 2001
between RW Professional Leasing Services Corp. and Third Federal Savings Bank

| Pmt No. | Payment Date | Beginning Balance | Payment Amount | Payment Interest | Principal | Ending Balance |
|---|---|---|---|---|---|---|
| 36 | 08/06/04 | 221,444.85 | 6,329.28 | 1,568.57 | 4,760.71 | 216,684.14 |
| 37 | 09/06/04 | 216,684.14 | 6,329.28 | 1,534.85 | 4,794.43 | 211,889.71 |
| 38 | 10/06/04 | 211,889.71 | 6,329.28 | 1,500.89 | 4,828.39 | 207,061.31 |
| 39 | 11/06/04 | 207,061.31 | 6,329.28 | 1,466.68 | 4,862.60 | 202,198.72 |
| 40 | 12/06/04 | 202,198.72 | 6,329.28 | 1,432.24 | 4,897.04 | 197,301.68 |
| 41 | 01/06/05 | 197,301.68 | 6,329.28 | 1,397.55 | 4,931.73 | 192,369.95 |
| 42 | 02/06/05 | 192,369.95 | 6,329.28 | 1,362.62 | 4,966.66 | 187,403.29 |
| 43 | 03/06/05 | 187,403.29 | 6,329.28 | 1,327.44 | 5,001.84 | 182,401.45 |
| 44 | 04/06/05 | 182,401.45 | 6,329.28 | 1,292.01 | 5,037.27 | 177,364.18 |
| 45 | 05/06/05 | 177,364.18 | 6,329.28 | 1,256.33 | 5,072.95 | 172,291.23 |
| 46 | 06/06/05 | 172,291.23 | 6,329.28 | 1,220.40 | 5,108.88 | 167,182.35 |
| 47 | 07/06/05 | 167,182.35 | 6,329.28 | 1,184.21 | 5,145.07 | 162,037.28 |
| 48 | 08/06/05 | 162,037.28 | 6,329.28 | 1,147.76 | 5,181.52 | 156,855.76 |
| 49 | 09/06/05 | 156,855.76 | 6,329.28 | 1,111.06 | 5,218.22 | 151,637.54 |
| 50 | 10/06/05 | 151,637.54 | 6,329.28 | 1,074.10 | 5,255.18 | 146,382.36 |
| 51 | 11/06/05 | 146,382.36 | 6,329.28 | 1,036.88 | 5,292.40 | 141,089.96 |
| 52 | 12/06/05 | 141,089.96 | 6,329.28 | 999.39 | 5,329.89 | 135,760.06 |
| 53 | 01/06/06 | 135,760.06 | 6,329.28 | 961.63 | 5,367.65 | 130,392.42 |
| 54 | 02/06/06 | 130,392.42 | 6,329.28 | 923.61 | 5,405.67 | 124,986.75 |
| 55 | 03/06/06 | 124,986.75 | 6,329.28 | 885.32 | 5,443.96 | 119,542.79 |
| 56 | 04/06/06 | 119,542.79 | 6,329.28 | 846.76 | 5,482.52 | 114,060.27 |
| 57 | 05/06/06 | 114,060.27 | 6,329.28 | 807.93 | 5,521.35 | 108,538.92 |
| 58 | 06/06/06 | 108,538.92 | 6,329.28 | 768.82 | 5,560.46 | 102,978.46 |
| 59 | 07/06/06 | 102,978.46 | 6,329.28 | 729.43 | 5,599.85 | 97,378.61 |
| 60 | 08/06/06 | 97,378.61 | 6,329.28 | 689.77 | 5,639.51 | 91,739.10 |
| 61 | 09/06/06 | 91,739.10 | 6,329.28 | 649.82 | 5,679.46 | 86,059.63 |
| 62 | 10/06/06 | 86,059.63 | 6,329.28 | 609.59 | 5,719.69 | 80,339.94 |
| 63 | 11/06/06 | 80,339.94 | 4,235.28 | 569.07 | 3,666.21 | 76,673.74 |
| 64 | 12/06/06 | 76,673.74 | 4,235.28 | 543.11 | 3,692.17 | 72,981.56 |
| 65 | 01/06/07 | 72,981.56 | 4,235.28 | 516.95 | 3,718.33 | 69,263.24 |
| 66 | 02/06/07 | 69,263.24 | 4,235.28 | 490.61 | 3,744.67 | 65,518.57 |
| 67 | 03/06/07 | 65,518.57 | 4,235.28 | 464.09 | 3,771.19 | 61,747.38 |
| 68 | 04/06/07 | 61,747.38 | 4,235.28 | 437.38 | 3,797.90 | 57,949.48 |
| 69 | 05/06/07 | 57,949.48 | 4,235.28 | 410.48 | 3,824.80 | 54,124.67 |
| 70 | 06/06/07 | 54,124.67 | 4,235.28 | 383.38 | 3,851.90 | 50,272.78 |
| 71 | 07/06/07 | 50,272.78 | 4,235.28 | 356.10 | 3,879.18 | 46,393.59 |
| 72 | 08/06/07 | 46,393.59 | 4,235.28 | 328.62 | 3,906.66 | 42,486.94 |
| 73 | 09/06/07 | 42,486.94 | 4,235.28 | 300.95 | 3,934.33 | 38,552.61 |
| 74 | 10/06/07 | 38,552.61 | 4,235.28 | 273.08 | 3,962.20 | 34,590.41 |

Page 3

Exhibit B--To Accompany the Assignment of Leases dated August 6, 2001
between RW Professional Leasing Services Corp. and Third Federal Savings Bank

| Pmt No. | Payment Date | Beginning Balance | Payment Amount | Payment Interest | Principal | Ending Balance |
|---|---|---|---|---|---|---|
| 75 | 11/06/07 | 34,590.41 | 4,235.28 | 245.02 | 3,990.26 | 30,600.14 |
| 76 | 12/06/07 | 30,600.14 | 4,235.28 | 216.75 | 4,018.53 | 26,581.61 |
| 77 | 01/06/08 | 26,581.61 | 4,235.28 | 188.29 | 4,046.99 | 22,534.62 |
| 78 | 02/06/08 | 22,534.62 | 4,235.28 | 159.62 | 4,075.66 | 18,458.96 |
| 79 | 03/06/08 | 18,458.96 | 4,235.28 | 130.75 | 4,104.53 | 14,354.43 |
| 80 | 04/06/08 | 14,354.43 | 4,235.28 | 101.68 | 4,133.60 | 10,220.83 |
| 81 | 05/06/08 | 10,220.83 | 4,235.28 | 72.40 | 4,162.88 | 6,057.95 |
| 82 | 06/06/08 | 6,057.95 | 4,235.28 | 42.91 | 4,192.37 | 1,865.58 |
| 83 | 07/06/08 | 1,865.58 | 1,878.79 | 13.21 | 1,865.58 | 0.00 |

By: Rochelle Besser
President, RW Professional Leasing Services Corp.

**EXHIBIT "C"**

# Promissory Note

This Promissory Note dated August 6, 2001 is from RW Professional Leasing Services Corp, having offices at 4584 Austin Blvd., Island Park, NY 11558 ("Borrower"), and is to Third Federal Savings Bank, having offices at 3 Penns Trail, Newtown, PA 18940 ("Bank").

WHEREAS, as a condition of Bank acquiring the Leases described in Exhibit A annexed hereto and made a part hereof ("Leases"), from Borrower, Bank has requested that Borrower execute this Promissory Note to assure Bank the punctual payment of rents under the Leases and the performance by the Lessees of all terms and conditions thereof; and

WHEREAS, Borrower has assigned to Bank all of its right, title, and interest in and to the Leases described in Exhibit A under the terms of an Assignment of Leases dated even date herewith;

NOW THEREFORE, in consideration of the premises, and for the purpose of inducing Bank to acquire the Leases described in Exhibit A, the undersigned hereby covenants and agrees with Bank as follows:

For value received, the undersigned promises to pay Bank, the sum of $332,078.69 (Three hundred thirty two thousand seventy eight and 69/100 Dollars) with interest from August 6, 2001, on the unpaid principal at the rate of 8.50% (Eight and 50/100 percent per annum): principal and interest payable in installments for the period as specified in Exhibit B attached hereto and made a part hereof.

The undersigned promises to pay to the holder hereof a "late" charge of 10% of normal monthly payment as liquidated damages, and not as penalty, for each installment that is 10 days late.

Upon default in payment on any installment, then the balance of this obligation shall become due immediately at the option of Bank.

If this note is not paid when due, Borrower promises to pay in addition all costs of collection and reasonable attorneys' fees incurred by Bank on account of such collection, whether or not suit is filed hereon.

Privilege is reserved to pay the within note in full at any time by paying principal and accrued interest with no repayment penalty.

On the happening to or by Borrower of any of the following events, this note and all other obligations, direct or contingent, shall become due and payable immediately, without demand or notice: (a) Making of any misrepresentation to the payee for the purpose of obtaining credit or an extension of credit; (b) any assignment for the benefit of creditors, voluntary or involuntary; (c) application for, or appointment of, a receiver; (d) filing a voluntary or involuntary petition under any of the provisions of the federal bankruptcy laws; (e) violation of any of the terms and

conditions of the Assignment of Leases or Sale and Servicing Agreement between Borrower and Bank, dated even date herewith and incorporated herein by reference; or, (f) if at any time in the sole discretion of Bank, Borrower's financial responsibility shall become impaired or unsatisfactory to the payee

This note is secured by the Leases described in Exhibit A. Upon the sale, transference, assignment, or transfer of any interest in the security, this note shall immediately become due and payable.

Borrower consents to renewals, replacements, and extensions of time for payments hereof before, at, or after maturity, consents to the acceptance of security for this note, and waives demand and protest.

Executed as of the day and year first mentioned above:

RW PROFESSIONAL LEASING SERVICES CORP

By _____

Its: President

_____
Witness

Alison Matheis
Print Witness Name

Exhibit B--To Accompany the Promissory Note dated August 6, 2001
between RW Professional Leasing Services Corp. and Third Federal Savings Bank

| | | |
|---|---|---|
| Principal Purchased | $332,078.69 | |
| Interest Rate | 8.50% | |
| Monthly Payment | variable | |
| Term (months) | 83 | |

| Pmt No. | Payment Date | Beginning Balance | Payment Amount | Interest | Principal | Ending Balance |
|---|---|---|---|---|---|---|
| 1 | 09/06/01 | 332,078.69 | 2,456.49 | 2,352.22 | 104.27 | 331,974.42 |
| 2 | 10/06/01 | 331,974.42 | 2,456.49 | 2,351.49 | 105.00 | 331,869.42 |
| 3 | 11/06/01 | 331,869.42 | 2,456.49 | 2,350.74 | 105.75 | 331,763.67 |
| 4 | 12/06/01 | 331,763.67 | 4,550.49 | 2,349.99 | 2,200.50 | 329,563.17 |
| 5 | 01/06/02 | 329,563.17 | 4,550.49 | 2,334.41 | 2,216.08 | 327,347.09 |
| 6 | 02/06/02 | 327,347.09 | 4,550.49 | 2,318.71 | 2,231.78 | 325,115.30 |
| 7 | 03/06/02 | 325,115.30 | 4,550.49 | 2,302.90 | 2,247.59 | 322,867.71 |
| 8 | 04/06/02 | 322,867.71 | 4,550.49 | 2,286.98 | 2,263.51 | 320,604.20 |
| 9 | 05/06/02 | 320,604.20 | 4,550.49 | 2,270.95 | 2,279.54 | 318,324.66 |
| 10 | 06/06/02 | 318,324.66 | 4,550.49 | 2,254.80 | 2,295.69 | 316,028.97 |
| 11 | 07/06/02 | 316,028.97 | 4,550.49 | 2,238.54 | 2,311.95 | 313,717.02 |
| 12 | 08/06/02 | 313,717.02 | 4,550.49 | 2,222.16 | 2,328.33 | 311,388.69 |
| 13 | 09/06/02 | 311,388.69 | 5,389.89 | 2,205.67 | 3,184.22 | 308,204.47 |
| 14 | 10/06/02 | 308,204.47 | 5,389.89 | 2,183.12 | 3,206.77 | 304,997.70 |
| 15 | 11/06/02 | 304,997.70 | 5,389.89 | 2,160.40 | 3,229.49 | 301,768.21 |
| 16 | 12/06/02 | 301,768.21 | 5,389.89 | 2,137.52 | 3,252.37 | 298,515.84 |
| 17 | 01/06/03 | 298,515.84 | 5,389.89 | 2,114.49 | 3,275.40 | 295,240.44 |
| 18 | 02/06/03 | 295,240.44 | 5,389.89 | 2,091.29 | 3,298.60 | 291,941.83 |
| 19 | 03/06/03 | 291,941.83 | 5,389.89 | 2,067.92 | 3,321.97 | 288,619.87 |
| 20 | 04/06/03 | 288,619.87 | 5,389.89 | 2,044.39 | 3,345.50 | 285,274.37 |
| 21 | 05/06/03 | 285,274.37 | 5,389.89 | 2,020.69 | 3,369.20 | 281,905.17 |
| 22 | 06/06/03 | 281,905.17 | 5,389.89 | 1,996.83 | 3,393.06 | 278,512.11 |
| 23 | 07/06/03 | 278,512.11 | 5,389.89 | 1,972.79 | 3,417.10 | 275,095.01 |
| 24 | 08/06/03 | 275,095.01 | 5,389.89 | 1,948.59 | 3,441.30 | 271,653.71 |
| 25 | 09/06/03 | 271,653.71 | 6,329.28 | 1,924.21 | 4,405.07 | 267,248.65 |
| 26 | 10/06/03 | 267,248.65 | 6,329.28 | 1,893.01 | 4,436.27 | 262,812.38 |
| 27 | 11/06/03 | 262,812.38 | 6,329.28 | 1,861.59 | 4,467.69 | 258,344.69 |
| 28 | 12/06/03 | 258,344.69 | 6,329.28 | 1,829.94 | 4,499.34 | 253,845.35 |
| 29 | 01/06/04 | 253,845.35 | 6,329.28 | 1,798.07 | 4,531.21 | 249,314.14 |
| 30 | 02/06/04 | 249,314.14 | 6,329.28 | 1,765.98 | 4,563.30 | 244,750.83 |
| 31 | 03/06/04 | 244,750.83 | 6,329.28 | 1,733.65 | 4,595.63 | 240,155.20 |
| 32 | 04/06/04 | 240,155.20 | 6,329.28 | 1,701.10 | 4,628.18 | 235,527.02 |
| 33 | 05/06/04 | 235,527.02 | 6,329.28 | 1,668.32 | 4,660.96 | 230,866.06 |
| 34 | 06/06/04 | 230,866.06 | 6,329.28 | 1,635.30 | 4,693.98 | 226,172.08 |
| 35 | 07/06/04 | 226,172.08 | 6,329.28 | 1,602.05 | 4,727.23 | 221,444.85 |

Page 2
Exhibit B--To Accompany the Promissory Note dated August 6, 2001
between RW Professional Leasing Services Corp. and Third Federal Savings Bank

| Pmt No. | Payment Date | Beginning Balance | Payment Amount | Payment Interest | Principal | Ending Balance |
|---|---|---|---|---|---|---|
| 36 | 08/06/04 | 221,444.85 | 6,329.28 | 1,568.57 | 4,760.71 | 216,684.14 |
| 37 | 09/06/04 | 216,684.14 | 6,329.28 | 1,534.85 | 4,794.43 | 211,889.71 |
| 38 | 10/06/04 | 211,889.71 | 6,329.28 | 1,500.89 | 4,828.39 | 207,061.31 |
| 39 | 11/06/04 | 207,061.31 | 6,329.28 | 1,466.68 | 4,862.60 | 202,198.72 |
| 40 | 12/06/04 | 202,198.72 | 6,329.28 | 1,432.24 | 4,897.04 | 197,301.68 |
| 41 | 01/06/05 | 197,301.68 | 6,329.28 | 1,397.55 | 4,931.73 | 192,369.95 |
| 42 | 02/06/05 | 192,369.95 | 6,329.28 | 1,362.62 | 4,966.66 | 187,403.29 |
| 43 | 03/06/05 | 187,403.29 | 6,329.28 | 1,327.44 | 5,001.84 | 182,401.45 |
| 44 | 04/06/05 | 182,401.45 | 6,329.28 | 1,292.01 | 5,037.27 | 177,364.18 |
| 45 | 05/06/05 | 177,364.18 | 6,329.28 | 1,256.33 | 5,072.95 | 172,291.23 |
| 46 | 06/06/05 | 172,291.23 | 6,329.28 | 1,220.40 | 5,108.88 | 167,182.35 |
| 47 | 07/06/05 | 167,182.35 | 6,329.28 | 1,184.21 | 5,145.07 | 162,037.28 |
| 48 | 08/06/05 | 162,037.28 | 6,329.28 | 1,147.76 | 5,181.52 | 156,855.76 |
| 49 | 09/06/05 | 156,855.76 | 6,329.28 | 1,111.06 | 5,218.22 | 151,637.54 |
| 50 | 10/06/05 | 151,637.54 | 6,329.28 | 1,074.10 | 5,255.18 | 146,382.36 |
| 51 | 11/06/05 | 146,382.36 | 6,329.28 | 1,036.88 | 5,292.40 | 141,089.96 |
| 52 | 12/06/05 | 141,089.96 | 6,329.28 | 999.39 | 5,329.89 | 135,760.06 |
| 53 | 01/06/06 | 135,760.06 | 6,329.28 | 961.63 | 5,367.65 | 130,392.42 |
| 54 | 02/06/06 | 130,392.42 | 6,329.28 | 923.61 | 5,405.67 | 124,986.75 |
| 55 | 03/06/06 | 124,986.75 | 6,329.28 | 885.32 | 5,443.96 | 119,542.79 |
| 56 | 04/06/06 | 119,542.79 | 6,329.28 | 846.76 | 5,482.52 | 114,060.27 |
| 57 | 05/06/06 | 114,060.27 | 6,329.28 | 807.93 | 5,521.35 | 108,538.92 |
| 58 | 06/06/06 | 108,538.92 | 6,329.28 | 768.82 | 5,560.46 | 102,978.46 |
| 59 | 07/06/06 | 102,978.46 | 6,329.28 | 729.43 | 5,599.85 | 97,378.61 |
| 60 | 08/06/06 | 97,378.61 | 6,329.28 | 689.77 | 5,639.51 | 91,739.10 |
| 61 | 09/06/06 | 91,739.10 | 6,329.28 | 649.82 | 5,679.46 | 86,059.63 |
| 62 | 10/06/06 | 86,059.63 | 6,329.28 | 609.59 | 5,719.69 | 80,339.94 |
| 63 | 11/06/06 | 80,339.94 | 4,235.28 | 569.07 | 3,666.21 | 76,673.74 |
| 64 | 12/06/06 | 76,673.74 | 4,235.28 | 543.11 | 3,692.17 | 72,981.56 |
| 65 | 01/06/07 | 72,981.56 | 4,235.28 | 516.95 | 3,718.33 | 69,263.24 |
| 66 | 02/06/07 | 69,263.24 | 4,235.28 | 490.61 | 3,744.67 | 65,518.57 |
| 67 | 03/06/07 | 65,518.57 | 4,235.28 | 464.09 | 3,771.19 | 61,747.38 |
| 68 | 04/06/07 | 61,747.38 | 4,235.28 | 437.38 | 3,797.90 | 57,949.48 |
| 69 | 05/06/07 | 57,949.48 | 4,235.28 | 410.48 | 3,824.80 | 54,124.67 |
| 70 | 06/06/07 | 54,124.67 | 4,235.28 | 383.38 | 3,851.90 | 50,272.78 |
| 71 | 07/06/07 | 50,272.78 | 4,235.28 | 356.10 | 3,879.18 | 46,393.59 |
| 72 | 08/06/07 | 46,393.59 | 4,235.28 | 328.62 | 3,906.66 | 42,486.94 |
| 73 | 09/06/07 | 42,486.94 | 4,235.28 | 300.95 | 3,934.33 | 38,552.61 |
| 74 | 10/06/07 | 38,552.61 | 4,235.28 | 273.08 | 3,962.20 | 34,590.41 |